# STATE OF WEST VIRGINIA
# SUPREME COURT OF APPEALS

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 16-0168** (Jackson County 15-F-56)

**Latizhon Hill,**
**Defendant Below, Petitioner**

**FILED**

**April 10, 2017**

RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

## MEMORANDUM DECISION

Petitioner Latizhon Hill, by counsel Courtney L. Ahlborn, appeals the Circuit Court of Jackson County's January 13, 2016, order sentencing her to a term of incarceration of one to five years for her conviction of one count of conspiracy to commit a felony. The State, by counsel David A. Stackpole, filed a response and a supplemental appendix. On appeal, petitioner argues that the circuit court erred in denying her motion to suppress evidence.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In April of 2015, petitioner was driving her vehicle in Ravenswood, West Virginia. Petitioner's co-defendant, Candice Brown, was a passenger in the vehicle. Officer A.R. Boggess of the Ravenswood Police Department observed what he believed was "a broken tail lamp [or] a broken brake light" on the vehicle and initiated a traffic stop. Officer Boggess later explained that petitioner appeared nervous, and he noticed several small empty plastic bags in the center console. Consequently, Officer Boggess asked petitioner to exit the vehicle, and he further asked her if he could search the vehicle. Petitioner did not consent to a search of her vehicle. Officer Boggess then learned that petitioner's driver's license was suspended through the State of South Carolina. Officer Boggess also learned that petitioner had a criminal history that included drug possession charges. Approximately six minutes after initiating the stop, Officer Boggess radioed for a canine unit to respond to the scene. Officer Boggess then requested that petitioner exit the vehicle, and she complied. Approximately twenty-five minutes after the officer initiated the traffic stop, the canine unit arrived. Shortly thereafter, the canine "hit on the vehicle" for the presence of drugs. Officers searched the vehicle and found over 500 grams of heroin in a bag in the trunk. Both petitioner and her co-defendant were arrested, and the vehicle was towed. Approximately one week later, petitioner's father and another relative took photographs of the vehicle's broken tail lights.

1

In June of 2015, petitioner was indicted on one count of possession with intent to deliver heroin and one count of conspiracy to commit a felony. In August of 2015, petitioner filed a motion to suppress "all evidence obtained as a result of the search of [her] vehicle." In her motion, petitioner argued that the search of her vehicle was illegal because police extended her traffic stop for thirty minutes without reasonable suspicion to allow a police canine unit to sniff the vehicle. Petitioner's motion did not allege that the traffic stop was illegal.

In early September of 2015, petitioner filed a second motion to suppress the evidence located in her vehicle. Petitioner's second motion was identical to the first motion to suppress filed in August of 2015. On the same date that petitioner filed her second motion, the circuit court held a suppression hearing. The circuit court took up petitioner's motion to suppress as well as her co-defendant's motion to suppress. At that hearing, the circuit court heard evidence and argument regarding the circumstances of the search of petitioner's vehicle as a result of the traffic stop and the seizure of drugs that followed. Officer Boggess testified that he stopped petitioner's vehicle because of what he believed was a "broken brake light." Officer Boggess also testified that he further observed that the taillight of petitioner's vehicle had a break "the size of a golf ball" and the lens cover was "busted out." Petitioner admitted that the vehicle had a crack in the taillight, and one of the photographs taken by petitioner's relatives was admitted into evidence.

By order entered on September 12, 2015, the circuit court found that the traffic stop was lawful and that Officer Boggess had probable cause to stop the vehicle based on his personal observation of the vehicle's defective lamp, which constituted a misdemeanor traffic violation. The circuit court specifically noted in its order that "[t]he fact that it was a defective 'signal lamp' as opposed to what the officer believed was a defective 'stop lamp,' is of little moment." The circuit court further noted in its order that the traffic stop was not completed by the time the canine unit arrived because, in addition to other evidence, both petitioner and her co-defendant had suspended licenses and could not have driven the vehicle away.

In October of 2015, petitioner entered a guilty plea to one count of conspiracy to commit a felony on the condition that she reserved her right to appeal the circuit court's denial of her motion to suppress. Under the plea agreement, the charge of possession with intent to deliver heroin was dismissed; petitioner agreed to testify against her co-defendant; and the State would stand silent at sentencing. In December of 2015, the circuit court accepted the plea agreement. Petitioner was ultimately sentenced to one to five years in prison with 238 days of credit for time served. This appeal followed.

We have held as follows:

> "In reviewing the findings of fact and conclusions of law of a circuit court . . . , we apply a three-pronged standard of review. We review the decision . . . under an abuse of discretion standard; the underlying facts are reviewed under a clearly erroneous standard; and questions of law and interpretations of statutes and rules are subject to a *de novo* review." Syllabus Point 1, *State v. Head*, 198 W.Va. 298, 480 S.E.2d 507 (1996).

Syl. Pt. 1, in part, *State v. Georgius*, 225 W.Va. 716, 696 S.E.2d 18 (2010). Further, we have explained as follows:

1. "When reviewing a ruling on a motion to suppress, an appellate court should construe all facts in the light most favorable to the State, as it was the prevailing party below. Because of the highly fact-specific nature of a motion to suppress, particular deference is given to the findings of the circuit court because it had the opportunity to observe the witnesses and to hear testimony on the issues. Therefore, the circuit court's factual findings are reviewed for clear error." Syllabus point 1, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

2. "In contrast to a review of the circuit court's factual findings, the ultimate determination as to whether a search or seizure was reasonable under the Fourth Amendment to the United States Constitution and Section 6 of Article III of the West Virginia Constitution is a question of law that is reviewed *de novo*. Similarly, an appellate court reviews *de novo* whether a search warrant was too broad. Thus, a circuit court's denial of a motion to suppress evidence will be affirmed unless it is unsupported by substantial evidence, based on an erroneous interpretation of the law, or, based on the entire record, it is clear that a mistake has been made." Syllabus point 2, *State v. Lacy*, 196 W.Va. 104, 468 S.E.2d 719 (1996).

Syl. Pts. 1 & 2, *State v. Bookheimer*, 221 W.Va. 720, 656 S.E.2d 471 (2007).

On appeal, petitioner argues that the circuit court erred in denying her motion to suppress evidence located in her vehicle because the search of her vehicle was based on an illegal stop and the stop was illegally prolonged.[1] As to police officers initiating traffic stops, we have held that "[p]olice officers may stop a vehicle to investigate if they have an articulable[,] reasonable suspicion that the vehicle is subject to seizure or a person in the vehicle has committed, is committing, or is about to commit a crime." Syl. Pt. 1, in part, *State v. Stuart*, 192 W.Va. 428, 452 S.E.2d 886 (1994). Petitioner argues that Officer Boggess had no articulable, reasonable suspicion to initiate the traffic stop because he was mistaken about the taillight being broken. Petitioner's argument ignores the entirety of Officer Boggess' testimony and the circuit court's subsequent order. At the suppression hearing, it was established that, although Officer Boggess was mistaken about which light was broken, petitioner's turn signal had a broken lens with a

---

[1]We note that petitioner did not allege that the traffic stop was illegally initiated in either of her motions to suppress. Moreover, while the parties presented evidence of the initiation of the stop at the suppression hearing, no argument on this issue was made to the circuit court at that time. Instead, proposed orders were submitted by each party. Generally, nonjurisdictional questions not raised at the circuit court level, but raised for the first time on appeal, will not be considered. *Whitlow v. Bd. of Educ. of Kanawha Cty*, 190 W.Va. 223, 226, 438 S.E.2d 15, 18 (1993); *Zaleski v. W.Va. Mut. Ins. Co.*, 224 W.Va. 544, 550, 687 S.E.2d 123, 129 (2009). However, with respect to the instant case, we find the initiation issue was sufficiently presented for appellate review. The parties presented evidence and proposed orders on the issue and, in addition to referencing it at the hearing, the circuit court ruled on it in its written order.

"hole roughly the size of a golf ball." Officer Boggess observed this broken light. Officer Boggess' initial assessment was not a mistake of law requiring the circuit court to find that the traffic stop was illegal, but it was a mistake of fact. It is clear from the record on appeal that petitioner's vehicle did, in fact, have defective equipment required under West Virginia law. *See State v. Dunbar*, 229 W.Va. 293, 299, 728 S.E.2d 539, 545 (2012) (holding that "[a] traffic stop for defective equipment must be premised upon a defect in equipment that is *required* under West Virginia law").

In this case, while petitioner maintains that she did not violate the traffic code regarding red lights on a vehicle, she ignores West Virginia Code § 17C-15-18. That statute provides as follows:

> (a) Any motor vehicle may be equipped and when required under this chapter shall be equipped with the following signal lamps or devices:
>
> > (1) A stop lamp on the rear which shall emit a red or yellow light and which shall be actuated upon application of the service (foot) brake and which may but need not be incorporated with a tail lamp.
> >
> > (2) A lamp or lamps or mechanical signal device capable of clearly indicating any intention to turn either to the right or to the left and which shall be visible both from the front and rear.
>
> (b) A stop lamp shall be plainly visible and understandable from a distance of one hundred feet to the rear both during normal sunlight and at nighttime and a signal lamp or lamps indicating intention to turn shall be visible and understandable during daytime and nighttime from a distance of one hundred feet both to the front and rear. *When a vehicle is equipped with a stop lamp or other signal lamps, such lamp or lamps shall at all times be maintained in good working condition. No stop lamp or signal lamp shall project a glaring or dazzling light.*

*Id*. (Emphasis added.) The evidence showed that petitioner's signal lamp was not in good, working condition. Further, Officer Boggess testified that the vehicle emitted a "glaring or dazzling light." As the circuit court found, and we agree, "[t]he fact that it was a defective 'signal lamp' as opposed to what the officer believed was a defective 'stop lamp,' is of little moment." The broken lens on the signal lamp of petitioner's vehicle clearly violated West Virginia Code § 17C-15-18. We have held that

> [w]hen one or more of the tail lamps on a vehicle originally equipped with multiple tail lamps are not in proper working condition, the provisions of West Virginia Code § 17C-15-1(a) (2004) that establish a misdemeanor offense for the operation of an unsafe or improperly equipped motor vehicle are violated.

4

Syl. Pt. 2, *Strick v. Cicchirillo*, 224 W.Va. 240, 683 S.E.2d 575 (2009). Based on this holding, we find that Officer Boggess had a reasonable, articulable suspicion to initiate a traffic stop of the vehicle. Accordingly, we find no error in the circuit court's determination that the traffic stop at issue was lawful and, consequently, in its denial of petitioner's motion to suppress on this ground.

The second contention in petitioner's appeal is that Officer Boggess illegally prolonged the traffic stop in question. This Court has held as follows:

> Following the law established by the United States Supreme Court in *United States v. Rodriguez*, -- U.S. --, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015), and *Illinois v. Caballes*, 543 U.S. 405, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005), a police officer may not extend an otherwise-completed traffic stop, absent reasonable suspicion, in order to conduct a dog sniff of the outside of a vehicle.

Syl. Pt. 7, *State v. Brock*, 235 W.Va. 394, 774 S.E.2d 60 (2015). In *Brock*, this Court considered facts and arguments very similar to the case sub judice. The *Brock* case involved a traffic stop where the defendant could not produce a valid operator's license, was asked to exit the vehicle, and was reportedly "acting real nervous[] [and] . . . fidgety." *Id*. at 399, 774 S.E.2d at 65. As in the instant case, the officer in *Brock* radioed for a canine unit six minutes into the traffic stop. The canine then "hit" on the vehicle and found items related to a clandestine methamphetamine laboratory. On appeal, the defendant in *Brock* argued that his motion to suppress was erroneously denied because the stop was illegally prolonged. In affirming the denial of his motion to suppress, we explained as follows:

> In examining the facts now before us we are led to the inevitable conclusion that the state trooper conducting the lawful traffic stop of the Petitioner's vehicle did not unreasonably extend that stop beyond its completion in order to conduct a dog-sniff of the outside of the vehicle. Rather, a review of the evidence submitted at the suppression hearing in this case, including the videotape of the traffic stop, establishes that the lawful stop for suspicion of impaired driving was never completed due to the Petitioner's nervousness and being fidgety, in addition to the Petitioner's inability to provide an identification, all of which culminated in the Petitioner being asked to exit his vehicle. This series of events caused the trooper to inquire as to whether there was anything illegal in the vehicle and the trooper requesting a canine unit. The dog then alerted the officers to the presence of drugs on the passenger side of the vehicle. Because the evidence fails to show that the mission of the lawful traffic stop was completed at the time the dog sniff of the vehicle occurred, we find that there was no violation of the Petitioner's rights against unreasonable searches and seizure; the trial court properly denied the motion to suppress the evidence seized from the vehicle.

*Id*. at 407, 774 S.E.2d at 73. As in *Brock*, the record on appeal in the instant case shows that the mission of the traffic stop was not completed at the time the dog sniff occurred. Officer Boggess testified that he was only approximately "three-quarters of the way through writing a citation" when the canine unit arrived. Further, neither petitioner nor her co-defendant passenger had valid

driver's licenses, which, as the circuit court correctly found, "meant that neither was going to drive the vehicle" away from the scene. As such, there was no unreasonable extension of an "otherwise completed traffic stop." Therefore, we find no merit to petitioner's arguments on appeal.

For the foregoing reasons, the circuit court's January 13, 2016, sentencing order is hereby affirmed.

Affirmed.

**ISSUED**:  April 10, 2017

**CONCURRED IN BY**:

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker