**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**William H. Cecil, III,**
**Petitioner Below, Petitioner**

**v.)  No. 23-55** (Greenbrier County CC-13-2007-C-107)

**Jonathan Frame, Superintendent,**
**Mt. Olive Correctional Complex,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner William H. Cecil, III, appeals the Circuit Court of Greenbrier County's December 30, 2022, order denying his petition for a writ of habeas corpus.[1] Here, the petitioner argues that the habeas court (1) erred in finding that his trial counsel did not provide ineffective assistance; (2) erred in finding that that the trial court had a sufficient factual basis to accept the petitioner's guilty pleas; (3) demonstrated partiality by making an offhand comment during the omnibus hearing; and (4) improperly denied his motion for DNA testing. Upon our review, finding no substantial question of law and no prejudicial error, we determine oral argument is unnecessary and that a memorandum decision affirming the circuit court order is appropriate. *See* W. Va. R. App. P. 21(c).

On the evening of August 30, 1981, three-year-old M.J.R. was reported missing. At that time, the petitioner rented a room in a mobile home owned by Kenard R. and Vicky R., which was located across the street from M.J.R.'s home. The day after the child went missing, the petitioner's father called law enforcement to report that the petitioner had told him that M.J.R. had fallen off a wall and that the petitioner had unsuccessfully tried to revive the child. According to the petitioner's father, the petitioner had informed him that he stuffed the child's body in a garbage bag and hid her under his bed. Officers responded to the call and located the petitioner near the home and placed him under arrest for public intoxication, as he was "causing a ruckus." The officers then entered the home and located M.J.R. in a garbage bag beneath the petitioner's bed.

Officers attempted to bring the petitioner before a magistrate that same evening but because of his intoxication, the magistrate determined that the petitioner could not understand the

---

[1] The petitioner appears by counsel Joshua L. Edwards and Taylor Runquist. The respondent appears by Attorney General Patrick Morrisey and Deputy Attorney General Andrea Nease Proper. Initials are used where necessary to protect the identity of the child. *See* W. Va. R. App. P. 40(e).

1

proceedings and could not waive his *Miranda* rights at that time.[2] The petitioner was brought back before the magistrate sometime between 11:00 a.m. and 12:30 p.m. the next day. The petitioner subsequently penned three written confessions dated September 1, 1981; September 13, 1981; and September 16, 1981. In the first confession, the petitioner claimed that he acted alone in sexually assaulting and smothering M.J.R. In the second and third confessions, the petitioner claimed that he and a man named Ralph Lawson Justice both participated in sexually assaulting and smothering the child.

In November 1981, the petitioner was indicted for one count of first-degree murder and one count of first-degree sexual assault. Before trial, the petitioner underwent psychiatric and psychological evaluations. The psychiatric evaluation report revealed no evidence that the petitioner suffered from a thought or mood disorder, and concluded he was competent to stand trial and assist with his defense. Likewise, the psychological report noted that while the petitioner had a mild intellectual disability, he was competent to stand trial and assist with his defense so long as his counsel explained everything to him in simple and concrete terms. The trial court also held a pretrial hearing on the petitioner's confessions and ruled they were voluntary and admissible.

The petitioner's trial commenced on June 29, 1982. The State introduced all three of the petitioner's confessions, presented the testimony of an officer who overheard the petitioner tell his father that he had killed M.J.R., and presented testimony of an analyst who analyzed a hair found on M.J.R.'s body and found it to be consistent with the petitioner's hair. After the State rested its case, the petitioner pled guilty to first-degree sexual abuse outside the presence of the jury. The trial resumed on the count of first-degree murder, and the petitioner presented the testimony of his father, who claimed that officers threatened the petitioner with violence unless he confessed to the crimes. Following the father's testimony, the petitioner also pled guilty to first-degree murder outside the presence of the jury. The petitioner waived his right to a presentence investigation report ("PSR") and requested to proceed directly to sentencing. Trial counsel requested that the trial court sentence the petitioner to life with mercy given the petitioner's young age, as he had just turned eighteen years old at the time of the crime. Ultimately, the court sentenced the petitioner to consecutive terms of life imprisonment without mercy upon his conviction for first-degree murder and one to five years of imprisonment upon his conviction of first-degree sexual abuse.

The petitioner filed a direct appeal with this Court in which, relevant to this appeal, he argued that (1) his convictions resulted from ineffective assistance of counsel and (2) his plea to first-degree murder was not voluntary. *See State v. Cecil*, 173 W. Va. 27, 311 S.E.2d 144 (1983). Upon review, this Court held that there was no ineffective assistance of counsel, no error in the admission of the confessions into evidence and, furthermore, determined that the record was sufficient to uphold the trial court's determination that the petitioner's guilty pleas were voluntarily and intelligently made. *Id.* at 34-35, 311 S.E.2d 152-53.

On April 30, 2007, the petitioner filed a petition for a writ of habeas corpus, "challeng[ing] his] conviction" pursuant to *In re Renewed Investigation of State Police Crime Laboratory*, 219

---

[2] *See Miranda v. Arizona*, 384 U.S. 436 (1966).

W. Va. 408, 633 S.E.2d 762 (2006) ("*Zain III*").[3] The habeas court appointed counsel, who filed an amended petition in March 2013, and a second amended petition in July 2017, raising other grounds for relief. Also in 2017, the petitioner filed a motion for DNA testing pursuant to *Zain III*. An omnibus hearing was held on January 19, 2018, during which the petitioner testified that his trial counsel failed to properly advise him regarding his pleas. According to the petitioner, trial counsel never explained the difference between the charges and their lesser-included offenses, never explained the pros and cons of pleading guilty, and did not recommend whether he should plead guilty. During his testimony, the petitioner interrupted his counsel a few times, prompting the habeas court to state "Mr. Cecil, your testimony will be more convincing if you've heard the question before you answer it."

On cross-examination, the petitioner admitted that he understood the charges brought against him, that he initiated the pleas during the trial, and that his counsel did not recommend that he plead guilty to first-degree murder—rather, he "just left it in [the petitioner's] hands as to whether to plead to the murder charge." The petitioner also admitted that the trial court had questioned him regarding his understanding of the plea and explained the various elements of the charges and their lesser-included offenses, but stated that he told the trial court he understood everything "just to get the plea over."

By order entered on December 30, 2022, the habeas court denied the petitioner's petition for a writ of habeas corpus. Relevant to this appeal, the habeas court addressed the petitioner's claims that he received ineffective assistance of counsel and that the trial court erred in accepting his plea without a factual basis.

The habeas court first disregarded several of the petitioner's claims as they had been previously addressed by this Court on the petitioner's direct appeal and, thus, were barred by res judicata. The habeas court then addressed the remaining arguments presented by the petitioner and, ultimately, found that trial counsel provided effective assistance. Specifically, the habeas court found no merit to the petitioner's arguments that his counsel was ineffective for failing to advise the petitioner to seek a PSR or make any meaningful effort to mitigate the offenses at sentencing. The court found that the record demonstrated that the trial court had informed the petitioner that it would order a PSR if he so desired but that after taking a recess to speak with trial counsel, the petitioner indicated his desire to waive his right to a PSR and proceed directly to sentencing. The court further concluded that even if the petitioner had demonstrated that trial counsel was involved in the waiver of his PSR, this was a strategic decision, and the petitioner failed to demonstrate that no reasonably qualified defense attorney would have waived the preparation of a PSR, and he failed to demonstrate what evidence he would have presented to the trial court had a presentence investigation been conducted. Lastly, the habeas court found that the petitioner failed to establish that trial counsel's argument for life with mercy was objectively unreasonable and failed to demonstrate what other argument or evidence trial counsel should have offered to mitigate punishment at sentencing. As such, the habeas court determined that the petitioner was entitled to no relief in that regard and denied the petitioner's petition for a writ of habeas corpus.

---

[3] The petitioner previously filed petitions for a writ of habeas corpus in case numbers 87-C-27(J) and 96-C-32(J), though it appears that no evidentiary hearings were held in either matter.

By order entered on the same date, the habeas court also denied the petitioner's motion for DNA testing pursuant to *Zain III*. The habeas court determined that even if the petitioner would not have pled guilty had DNA testing of the hair found on M.J.R.'s body been available to him at the time of trial, the result of the proceedings was likely to have been the same. The habeas court noted that although the petitioner pled guilty, he did not enter his guilty pleas until the State had already presented its evidence, which overwhelmingly established the petitioner's guilt. Moreover, even if the hair belonged to Mr. Justice, as the petitioner contends, such results would only tend to corroborate the petitioner's third written confession that he and Mr. Justice took turns smothering and sexually assaulting M.J.R. The court concluded that, therefore, any results from the DNA testing would be unlikely to result in the petitioner's acquittal or conviction of a lesser charge or that the results would have benefited him at sentencing.

The petitioner now appeals from the circuit court's order denying him habeas relief, and in our review of that order, "[w]e review the final order and the ultimate disposition under an abuse of discretion standard; the underlying factual findings under a clearly erroneous standard; and questions of law are subject to a *de novo* review." Syl. Pt. 1, in part, *Mathena v. Haines*, 219 W. Va. 417, 633 S.E.2d 771 (2006).

In his first assignment of error, the petitioner argues that the habeas court erred in determining that his trial counsel was effective. According to the petitioner, trial counsel was ineffective for several reasons, including: 1) failing to use the medical examiner's findings to contradict the petitioner's confession; 2) failing to suppress the search of the petitioner's room on the basis that he had a separate, distinct privacy interest apart from Kenard and Vicky R.; 3) failing to suppress the petitioner's confession based on a violation of the prompt presentment rule; 4) allowing the jury to know that the petitioner had taken a polygraph test; 5) failing to adequately advise the petitioner regarding the possible advantage of continuing on with his trial; and 6) failing to encourage the petitioner to obtain a PSR prior to sentencing and failing to make any meaningful argument to mitigate his sentence. The petitioner also alleges that these failures by trial counsel amount to cumulative error.

"[T]his Court's adherence to principles of finality in habeas proceedings is well established." *Lee v. Searls*, No. 22-931, 2024 WL 2946665, at \*2 (W. Va. June 10, 2024) (memorandum decision). Habeas petitioners may not assert grounds that have been "previously and finally adjudicated or waived in . . . any other proceeding or proceedings which the petitioner has instituted to secure relief from such conviction or sentence." W. Va. Code § 53-4A-1(a). We have cited to West Virginia Code § 53-4A-1 as a basis to decline to re-address claims in habeas proceedings that were asserted on direct appeal. *See State ex rel. Waldron v. Scott*, 222 W. Va. 122, 663 S.E.2d 576 (2008); *Heavener v. Pszczolkowski*, No. 15-0241, 2016 WL 5210797 (W. Va. Sept. 16, 2016) (memorandum decision). We have also relied on prior case law in declining to reconsider issues on appeal from a habeas proceeding that were considered on direct appeal. *See State ex rel. Daniel v. Legursky*, 195 W. Va. 314, 317 n.1, 465 S.E.2d 416, 419 n.1 (1995). Regarding ineffective assistance of counsel in particular, we cautioned in *Daniel* that

> [t]raditionally, ineffective assistance of counsel claims are not cognizable on direct appeal. We have urged counsel repeatedly to think of the consequences of raising this issue on direct appeal. Claims that an attorney was ineffective involve inquiries

4

into motivation behind an attorney's trial strategies. *See State v. Miller*, 194 W.Va. 3, 459 S.E.2d 114 (1995). Without such facts trial counsel's alleged lapses or errors will be presumed tactical moves, flawed only in hindsight. *What is more, in the event a defendant pursues his claim on direct appeal and it is rejected, our decision will be binding on the circuit court through the law of the case doctrine, "leaving [defendant] with the unenviable task of convincing the [circuit court] judge that he should disregard our previous ruling." U.S. v. South, 28 F.3d 619, 629 (7th Cir.1994). That is why in Miller we suggested that a defendant who presents an ineffective assistance claim on direct appeal has little to gain and everything to lose.*

*Id.* (Emphasis added).

As noted above, the petitioner filed a direct appeal with this court and raised claims of ineffective assistance of counsel, which this Court addressed on the merits. Specifically, the petitioner argued that the search and seizure of his home was warrantless and unreasonable and that, to the extent his counsel "did not pursue an issue concerning that search and seizure, his counsel was ineffective." *Cecil*, 173 W. Va. at 31, 311 S.E.2d at 149. Included in this argument was the fact that the petitioner "may have been paying 'board' to the owners." *Id.* The petitioner further argued that "his counsel at trial was ineffective in not more aggressively seeking the exclusion from evidence of the [petitioner's] written confessions," that "his counsel did not properly advise him concerning his plea of guilty to murder of the first degree," and that "his counsel was ineffective because he gave the appellant no recommendation concerning the [petitioner's] plea of guilty to murder in the first degree." *Id.* at 34-35, 311 S.E.2d at 152-53.

In our review of the petitioner's direct appeal, we found his arguments to be completely without merit. We found that officers properly searched the petitioner's room and, thus, "reject[ed the petitioner's] assertions of error with respect to the finding of the body of [M.J.R.]" *Id.* at 34, 311 S.E.2d at 153. We further found "no error with respect to the admission [of the three confessions] into evidence" and, importantly, found "no evidence of ineffective assistance of counsel concerning the [petitioner's] confessions." Moreover, we concluded that "[t]he record in this case is sufficient to sustain the determination of the trial court that the [petitioner's] pleas of guilty to both sexual abuse in the first degree and murder of the first degree were voluntarily and intelligently made" and found "no evidence of ineffective assistance of counsel[.]" *Id.* at 35, 311 S.E.2d at 153.

Most critically, however, we summed up our review of the petitioner's ineffective assistance of counsel claim by reiterating that "[b]ased upon the record in this case, we conclude that the [petitioner] has not established that his convictions resulted from ineffective assistance of counsel." *Id.* Given the forgoing, we refuse to consider the petitioner's habeas claims of ineffective assistance of counsel, as we have already reviewed the record and concluded that there was no ineffective assistance of counsel. We see no reason to disturb our prior holding.[4]

---

[4] We further note that in his brief in this appeal, the petitioner fails to cite to, acknowledge, or discuss the applicable test for establishing ineffective assistance of counsel. *See* Syl. Pt. 5, in part, *State v. Miller*, 194 W. Va. 3, 459 S.E.2d 114 (1995) (citing *Strickland v. Washington*, 446

5

In his second assignment of error, the petitioner contends that the habeas court erred in finding that the trial court did not err in accepting the petitioner's pleas without a factual basis. Rather than asking the petitioner to set forth the factual basis for his plea, the trial court merely stated the elements of the crimes charged and their lesser included offenses and asked the petitioner whether he murdered M.J.R. The petitioner argues that this was not a satisfactory basis for accepting his plea, especially considering that the trial court used legal jargon when the petitioner had a learning disability and needed everything explained in simple, concrete terms. In sum, the petitioner argues that the habeas court erred in finding that the trial court carefully explained the petitioner's rights to him and that the potential consequences of his plea when the trial court's explanation was "most likely . . . not understood by the Petitioner."

However, these claims, too, are barred from our consideration. While the petitioner attempts to reframe the issue as whether the trial court lacked an adequate factual basis to accept the plea, he is actually relitigating whether he knowingly and intelligently entered his plea. This issue is barred by res judicata, as we also addressed this issue in the petitioner's direct appeal. We have previously held that "[t]he general rule is that when a question has been definitively determined by this Court its decision is conclusive on parties, privies and courts, including this Court, upon a second appeal or writ of error and it is regarded as the law of the case." Syl. Pt. 1, *Mullins v. Green*, 145 W. Va. 469, 115 S.E.2d 320 (1960). The doctrine "generally prohibits reconsideration of issues which have been decided in a prior appeal in the same case, provided that there has been no material changes in the facts since the prior appeal[.]" *State ex rel. Frazier & Oxley, L.C. v. Cummings*, 214 W. Va. 802, 808, 591 S.E.2d 728, 734 (2003) (quoting 5 Am. Jur. 2d *Appellate Review* § 605 (1995)); *see also Medley v. Ames*, No. 21-0113, 2022 WL 856611 (W. Va. Mar. 23, 2022) (memorandum decision) (concluding that the law of the case doctrine prohibited the habeas petitioner from relitigating claims raised on direct appeal). In the petitioner's direct appeal, we specifically found that "[t]he record in this case is sufficient to sustain the determination of the trial court that the [petitioner's] pleas of guilty to both sexual abuse in the first degree and murder of the first degree were *voluntarily and intelligently* made." *Cecil*, 173 W. Va. at 35, 311 S.E.2d at 153 (emphasis added). Accordingly, the petitioner is prohibited from relitigating this claim.

In the petitioner's third assignment of error, he contends that the habeas court demonstrated partiality and bias when it advised him that "your testimony will be more convincing if you've heard the question before you answer it" after the petitioner interrupted a few questions asked by his habeas counsel. The petitioner avers that this comment clearly demonstrates that the habeas court did not believe the petitioner's testimony and had formed an opinion prior to the close of evidence.

We disagree. While judges must "be extremely cautious not to intimate in any manner by word, tone, or demeanor, [their] opinion upon any fact in issue," *State v. Thompson*, 220 W. Va.

_____

U.S. 668 (1984)) (holding that to establish a claim of ineffective assistance of counsel, the petitioner must prove: "(1) [c]ounsel's performance was deficient under an objective standard of reasonableness; and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different.").

398, 412, 647 S.E.2d 834, 848 (2007), they may nevertheless instruct a witness to abide by the rules of the court. *See State v. Delorenzo*, 247 W. Va. 707, 718, 885 S.E.2d 645, 656 (2022) (citing *People v. Williams*, 201 Ill.App.3d 207, 146 Ill.Dec. 924, 558 N.E.2d 1258, 1267 (1990)). The petitioner cites to *Thompson* to support his assertion that the habeas court was not impartial or neutral. However, in *Thompson*, the judge extensively questioned witnesses and made comments that aided the prosecution. *Id.* at 411-12, 647 S.E2d at 847-48. In contrast, the habeas court below made one comment that essentially instructed the petitioner to allow his counsel to finish his question before answering. This scenario is much more akin to the comments made by the court in *Delorenzo*. There, the court "instructed Mr. Delorenzo to follow its rules when he talked over objections and failed to answer 'yes' or 'no' questions during cross-examination." *Id.* at 717-18, 885 S.E.2d at 655-56. Upon reviewing these comments for impartiality, we held that "these comments were within the court's discretion 'and were not attempts to discredit' him or his defense." *Id.* at 718, 885 S.E.2d at 656 (quoting *Williams*, 558 N.E.2d at 1267). Such is the case here. The transcript does not reveal that the habeas court was inappropriate, impartial, or prejudicial in essentially warning the petitioner that it is best practice to allow his counsel to finish asking the questions before responding.

Lastly, the petitioner assigns as error the habeas court's denial of his motion for DNA testing. The petitioner avers that, at trial, an analyst testified that a hair found on the victim's body shared a "strong association" with a known hair sample from the petitioner. According to the petitioner, DNA testing would "more strongly confirm, or, in the same vein, dispel that the hair belonged to the Petitioner" and, if shown to belong to someone else, would lend support to the petitioner's claim that another person killed M.J.R. Although not clear, the petitioner appears to argue that should the hair belong to someone other than the petitioner, it would give him "a better argument at sentencing."

Before this Court, the petitioner failed to supply any rules or law in support of his argument that the habeas court should have granted his motion for DNA testing. West Virginia Rule of Appellate Procedure 10(c)(7) requires a petitioner to "clearly exhibit[] the points of fact and law presented" and to "cit[e] the authorities relied on[.]" Citing to "some of the facts involved with an issue" does not meet the requirements of Rule 10(c)(7). *State v. Benny W.*, 242 W. Va. 618, 632 n.23, 837 S.E.2d 679, 693 n.23 (2019). The petitioner has not provided this Court with *any* authority in support of his argument. Indeed, though his motion was based on *Zain III* below, in his brief before this Court, the petitioner did not cite to, much less analyze, *Zain III* or any other cases to show how he is legally entitled to DNA testing. As such, the petitioner's argument is "[a] skeletal 'argument', really nothing more than an assertion" and "does not preserve a claim." *See State Dep't of Health and Human Res. ex rel. Robert Michael B. v. Robert Morris N.*, 195 W. Va. 759, 765, 466 S.E.2d 827, 833 (1995) (internal quotations and citations omitted). Accordingly, the petitioner's limited argument has not preserved this claim, and we refuse to address his argument that the habeas court erred by denying his motion for DNA testing.

For the reasons stated above, this Court affirms the December 30, 2022, final order of the Circuit Court of Greenbrier County.

Affirmed.

**ISSUED:**  November 26, 2024

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice John A. Hutchison
Justice William R. Wooton
Justice C. Haley Bunn

**DISQUALIFIED:**

Chief Justice Tim Armstead

8